IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 35051-7-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| ELIODORO SALSEDA-CASTANEDA | ) | |
| aka ELIODORO SALCEDO, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, A.C.J. — Eliodoro Salseda-Castaneda appeals his conviction for felony

violation of a no-contact order. We affirm.

## FACTS[1]

On March 7, 2016, Mr. Salseda-Castaneda was arrested on an outstanding warrant

by a community custody officer (CCO) for the Department of Corrections. At the time of

his arrest, Mr. Salseda-Castaneda was at an abandoned home, located approximately

98 feet from the apartment of his estranged girlfriend. Under the terms of a no-contact

order, Mr. Salseda-Castaneda was prohibited from coming within 1,000 feet of his

girlfriend's residence or person.

---

[1] Because Mr. Salseda-Castaneda challenges the sufficiency of the State's trial evidence, we construe the facts in the light most favorable to the State. *State v. Kintz*, 169 Wn.2d 537, 551, 238 P.3d 470 (2010).

After his arrest, Mr. Salseda-Castaneda waived his right to silence and made a statement. He admitted he knew about the no-contact order prohibiting him from contacting his estranged girlfriend. However, Mr. Salseda-Castaneda claimed to be unaware that his girlfriend resided at the nearby apartment.

At Mr. Salseda-Castaneda's trial for felony violation of a no-contact order, the State presented testimony from the owner of the apartment occupied by Mr. Salseda-Castaneda's estranged girlfriend. The owner testified that he had originally rented the apartment to both Mr. Salseda-Castaneda and his girlfriend about three years prior to trial. The owner further testified that Mr. Salseda-Castaneda lived in the apartment for most of the past three years and that he had most recently seen Mr. Salseda-Castaneda at the apartment approximately one week prior to Mr. Salseda-Castaneda's arrest.

Mr. Salseda-Castaneda also testified at trial. He claimed he had been in the area of his old apartment to meet with some friends. Once he saw the CCO, he hid in a building he knew was abandoned. Mr. Salseda-Castaneda claimed he did not know whether his estranged girlfriend (who was also the mother of his children) still lived in his old apartment. He said he was no longer talking to his girlfriend and thought she had moved. Although Mr. Salseda-Castaneda claimed he was trying to abide by the terms of his no-contact order, he acknowledged that he had violated the terms of the order on prior

2

occasions to see his children.

A jury convicted Mr. Salseda-Castaneda of felony violation of a no-contact order. He now appeals.

ANALYSIS

*Sufficiency of the evidence*

Mr. Salseda-Castaneda claims the State presented insufficient evidence to prove he knowingly violated the terms of his no-contact order. Specifically, Mr. Salseda-Castaneda argues the evidence failed to show he knew he was within 1,000 feet of his estranged girlfriend's residence.

We are unswayed by Mr. Salseda-Castaneda's sufficiency argument. The State presented overwhelming evidence showing that Mr. Salseda-Castaneda knew his girlfriend had previously lived in the apartment at issue in this case. Indeed, Mr. Salseda-Castaneda was an original party to the rental agreement. The State also presented sufficient circumstantial evidence that Mr. Salseda-Castaneda continued to know his estranged girlfriend lived at the same apartment up until the offense conduct date. Most notable was the apartment owner's testimony that Mr. Salseda-Castaneda was regularly at the apartment, including the week prior to his arrest. While Mr. Salseda-Castaneda testified that he did not know whether his estranged girlfriend continued to live at his old

3

apartment, the jury was entitled to discredit this statement.  The State satisfied its burden

of proof.

*Prosecutorial misconduct*

Mr. Salseda-Castaneda argues the italicized comments below, made by the

prosecutor in his closing and rebuttal argument, constituted misconduct:

> What does make a lot of sense is that [Mr. Salseda-Castaneda] knew good
> and well that his girlfriend that he had a child in common with was living in
> the apartment that he himself had moved into with her just about three years
> ago and lived there all the time. . . .  I'm going to argue the defendant's
> testimony on this point was not credible in this case. . . .  [The apartment
> owner] testified and the defendant admitted that they had both signed the
> [rental agreement] when they moved in three years ago.  They lived there
> together in the past.
> . . . .
> Now he's saying, oh, I didn't know she was there that day.  I was just
> down the street.  I just happened to be passing by.  It's pure coincidence.  I
> just happened to be passing by and I seen the DOC officers.  So I ran in
> there to hide.
> How much sense does that make? We know [the apartment owner]
> told us that she was there that day.  She was there the day that happened.
> The defendant testified he's always trying to see his kids despite the no
> contact order.
> The only thing that makes sense is that he knows good and well that
> she [was] still living there.  As a matter of fact, I don't even have to show
> that she was there that day.  All I have to show is that she was living there,
> that it was her residence and he was aware of that fact.
> Did he tell you about something that happened where he all of the
> sudden had some reason to believe that she'd moved after living there for
> three years?  No.  *He never testified that she'd told him that she had moved.*
> . . . .

4

> I would argue to you, ladies and gentlemen, that a reasonable person would conclude, after looking at all the evidence and talking to the eleven other reasonable people on the jury, of course, he knew. Of course, he knew she was living there. He moved in with her to this apartment. *He never said that she told him that she had moved out or anything like that.* I would ask you to return a verdict of guilty. Thank you.

2 Report of Proceedings (Dec. 20, 2016) at 84, 86-88, 97 (emphasis added). No objection was made during trial to the prosecutor's statements.

Mr. Salseda-Castaneda first argues the prosecutor improperly commented on his right to silence. We disagree. Mr. Salseda-Castaneda testified at trial. The State was therefore entitled to point out the holes in Mr. Salseda-Castaneda's testimony, including his lack of any explanation for why he thought his estranged girlfriend no longer lived at her long-term apartment. *See State v. McKenzie*, 157 Wn.2d 44, 59-60, 134 P.3d 221 (2006).

Next, Mr. Salseda-Castaneda claims the prosecutor's arguments improperly shifted the burden of proof. Burden shifting can happen when the prosecutor argues that the jury can only acquit if it believes the defendant's testimony. *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 713-14, 286 P.3d 673 (2012). But that is not what happened here. The prosecutor never suggested that the verdict rested on the jury's assessment of Mr. Salseda-Castaneda's credibility. Instead, the prosecutor simply argued that the evidence showed Mr. Salseda-Castaneda was not credible and that, in light of the other

evidence, a verdict of guilty was proper. This line of reasoning was not improper.

Mr. Salseda-Castaneda has not demonstrated any misconduct during the prosecutor's closing argument, let alone misconduct sufficiently severe to warrant mistrial. *See State v. Emery*, 174 Wn.2d 741, 762, 278 P.3d 653 (2012) (Reversal unwarranted unless misconduct was so flagrant or ill-intentioned that it could not be remedied by a curative instruction.). Reversal for prosecutorial misconduct is not warranted here.

## CONCLUSION

The judgment of conviction is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, A.C.J.

WE CONCUR:

_____          _____
Korsmo, J.                                Siddoway, J.

6